UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JANET K. SCHWALJE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-CV-1314-ERW |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the application of Plaintiff Janet Schwalje ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (ECF No. 16) and Defendant has filed a brief in support of the Answer (ECF No. 23).

**I. Procedural History**

Plaintiff filed her applications for DIB and SSI on March 20, 2015, alleging disability beginning December 26, 2014 due to depression, mood swings, diabetes, arthritis, toe amputation due to melanoma, anxiety, and attention deficit disorder ("ADD"). (Tr. 14, 89, 186-

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

93) Plaintiff was initially denied relief on May 27, 2015. (Tr. 14, 82-83, 89-93) At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on June 1, 2017, at which Plaintiff and a vocational expert testified. (Tr. 28-55, 96) After the hearing, by a decision dated September 26, 2017, the ALJ found Plaintiff was not disabled. (Tr. 14-22) On June 5, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-5) Thus, the ALJ's decision stands as the final decision of the Commissioner.

In this action for judicial review, Plaintiff claims the ALJ's decision is not supported by substantial evidence on the record as a whole because the ALJ failed to properly consider Plaintiff's bipolar disorder at Step 2 of the sequential evaluation.

For the reasons that follow, the Court finds the ALJ erred in his evaluation, and the case will be reversed and remanded for further consideration.

## II. Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, the Court notes Plaintiff filed a 65-paragraph Statement of Uncontroverted Facts. (ECF No. 17) In response, the Defendant admits paragraphs 1 through 65 of Plaintiff's statement of facts. (ECF No. 23-1) The Court adopts the facts set forth in the Plaintiff's Statement of Uncontroverted Material Facts and admitted by the Defendant, as they provide a fair and accurate description of the relevant medical record before the Court. Additional specific medical facts will be discussed as needed to address the parties' arguments.

Evidence relating to Plaintiff's description of her symptoms and functional abilities indicates Plaintiff believed she was unable to work due to her anxiety and depression, which kept her mostly in her house. She was hospitalized for anxiety in 2015. Plaintiff experienced episodes of sleeping for several days at a time. She took medication and regularly saw a

therapist. Plaintiff lived with a friend and spent time playing with her dog. She only left the house to grocery shop, which only occurred when she had nothing left to eat. Plaintiff did not want to go out; she wanted the peace and quiet of her own home. Plaintiff did not enjoy being around other people, but she had no problems unless they were negative. She performed household chores such as dusting, vacuuming, and laundry. (Tr. 30-49)

In a function report, Plaintiff stated she experienced mood swings from being nice to becoming violent. She was able to perform chores, take care of her cats, fix her own meals, text friends, and watch TV. She shopped only for necessities. In addition to physical limitations, Plaintiff reported problems with memory, completing tasks, concentrating, understanding, following instructions, and getting along with others. She handled stress okay with her depression/anxiety medication but not at all without it. She experienced "wicked" dreams. (Tr. 234-46)

### III. Discussion

#### A. <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act, Plaintiff must prove she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience,

3

engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a).

Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to

her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *McCoy*, 648 F.3d at 611.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove she is disabled. *Brantley v. Colvin*, No. 4:10CV2184 HEA, 2013 WL 4007441, at *3 (E.D. Mo. Aug. 2, 2013) (citation omitted). At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F.Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

The Court must consider evidence which supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). The Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

## B. The ALJ's Decision

The ALJ's Decision conforms to the five-step process outlined above. The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019, and she had not engaged in substantial gainful activity since December 26, 2014, the alleged onset date. (Tr. 16) The ALJ found Plaintiff's obesity, depression, anxiety, status post melanoma of left great toe with amputation, and degenerative disc disease of cervical spine were severe impairments, but these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16-17)[2] Specifically, the ALJ analyzed Plaintiff's eligibility for Listing 12.04 (Affective Disorder) and Listing 12.06 (Anxiety Related Disorders).

The ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except Plaintiff

> must be allowed to alternate between sitting and standing at no greater than 30 minute intervals while remaining on task; never climb ladders, ropes or scaffolds or crawl, occasionally climb ramps and stairs, balance, stoop, kneel, and crouch.

---

[2] The ALJ additionally found that Plaintiff's hypothyroidism, diabetes, cataracts, minimal right thoracic scoliosis, minimal osteoarthritis of left knee, enthesopathy, distal achilles tendon, and plantar ascia insertion to calcaneous were non-severe. (Tr. 19) Plaintiff does not challenge these findings.

> [F]requently handle, finger, and feel; work limited to simple, routine, repetitive tasks in which interaction with the public is not a job requirement, interaction with co-workers is casual and infrequent without tandem tasks, and occasional interaction with supervisors.

(Tr. 18) While the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, he also found Plaintiff's statements about the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 20)

The ALJ determined Plaintiff was unable to perform any past relevant work. However, considering Plaintiff's age, education, work experience and RFC, the ALJ found Plaintiff could perform work that exists in significant numbers in the national economy. Specifically, the ALJ relied on testimony from a vocational expert to determine Plaintiff could perform jobs such as hand packer and production worker/assembler. (Tr. 21-22) The ALJ therefore found Plaintiff was not under a disability from December 26, 2014, her alleged onset date, through the date of the decision. (Tr. 22)

C. **Analysis of Issue Presented**

In her initial brief to this Court, Plaintiff raises one argument, claiming the ALJ erred in failing to properly consider Plaintiff's bipolar disorder at step two of the sequential analysis. Specifically, Plaintiff contends the ALJ failed to recognize Plaintiff was consistently diagnosed with bipolar disorder, and those symptoms would have affected the RFC assessment. (ECF No. 16) Defendant responds the fact the ALJ did not find bipolar disorder to be a distinct severe impairment in addition to her severe impairments of anxiety and depression is not a basis to remand the ALJ's decision.

Step two of the sequential evaluation requires the ALJ to consider the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). "It is the claimant's burden to establish

7

that [her] impairment or combination of impairments are severe." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citation omitted). While severity is not an arduous standard for a claimant to meet, "it is also not a toothless standard." *Id.* at 708 (citations omitted).

Here, at step two the ALJ found Plaintiff had several severe mental impairments, including depression and anxiety, and the ALJ then continued the sequential analysis. (Tr. 16-17) As such, this case is distinguishable from other cases where the ALJ found no severities or only "slight abnormalities" and denied benefits without continuing to the subsequent steps of the evaluation process. *See, e.g., Hudson v. Bowen*, 870 F.2d 1392, 1396 (8th Cir. 1989) (remanding with directions to determine severity of claimant's impairments where the ALJ terminated the inquiry at step two); *Mahan v. Astrue,* No. 4: 09 CV 292 DDN, 2009 WL 5176569, at *8 (E.D. Mo. Dec. 21, 2009) (finding error where the ALJ concluded the medical evidence established only slight abnormalities that would have no more than a minimal effect on claimant's ability to work, ending the inquiry at Step Two of the five-step evaluation process").

The Supreme Court has characterized a claimant's burden at step two to show he or she has a severe impairment as a "threshold" requirement. *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) ("In our view, both the language of the Act and its legislative history support the Secretary's decision to require disability claimants to make a threshold showing that their "medically determinable" impairments are severe enough to satisfy the regulatory standards."). This step two determination allows the ALJ to proceed with the sequential evaluation. *Rouse v. Berryhill*, No. 4:17 CV 2511 DDN, 2019 WL 1359384, at *5 (E.D. Mo. Mar. 26, 2019) (citation omitted).

Eighth Circuit "precedent indicates that the failure to list a specific impairment at step two is not an error unless the impairment is 'separate and apart' from the other listed impairments." *Gregory v. Comm'r, Soc. Sec. Admin.*, 742 F. App'x 152, 156 (8th Cir. 2018). Further, other courts in this District have held "the ALJ's failure to list all the severe impairments at Step Two is harmless, so long as the ALJ adequately discusses the effects of those impairments at the subsequent steps." *Rouse*, 2019 WL 1359384, at *6; *see also Weed v. Saul*, No. 4:18-CV-001192-SPM, 2019 WL 4451259, at *4 (E.D. Mo. Sept. 17, 2019) (finding harmless error where ALJ proceeded with the analysis and considered all of claimant's symptoms, including those symptoms which overlapped witih her severe impairments); *Givans v. Astrue*, No. 4:10CV417 CDP, 2012 WL 1060123, at *17 (E.D. Mo. Mar. 29, 2012) (finding the ALJ's step two determination was harmless where review of the decision showed the ALJ considered claimant's complaints and symptoms related to PTSD in the RFC analysis).

Here, Plaintiff argues the ALJ erred in failing to find Plaintiff's diagnosed bipolar disorder a severe impairment at step two because the signs and symptoms associated with this disorder impacted Plaintiff's RFC. Review of the record shows the ALJ failed to recognize and evaluate the signs and symptoms related to bipolar disorder in the record, including treatment records from Plaintiff's treating physician, Tonya Little, M.D. Although the ALJ acknowledges Plaintiff's diagnosis of bipolar depression, he makes no mention of Plaintiff's consistent treatment by Dr. Little. The record shows Plaintiff was first diagnosed with bipolar disorder when she was hospitalized from March 12 to March 17, 2015. (Tr. 433-64) Thereafter, she established care with Tonya Little, M.D., who diagnosed bipolar disorder (manic depression). (Tr. 583, 589, 600, 664, 680, 694, 820, 837, 861, 868, 880). During mental status exams, Dr. Little found loose association, inappropriate judgment in social situations, impaired

concentration, depressed mood and affect, flight of ideas, and tangential and pressured thought processes. (Tr. 583, 600, 694, 861, 880) In his decision, the ALJ makes no mention of Dr. Little and little reference to Dr. Little's treatment notes in the record. (Tr. 20)

The Court finds the ALJ's failure to find Plaintiff's bipolar disorder severe at step two was not harmless error, and reversal and remand on that basis is warranted. Only where an ALJ thoroughly considers and discusses a claimant's complaints and symptoms relating to all her mental impairments, as well as her mental health providers' observations and treatment, will a court conclude the failure to find this condition severe was harmless. *See Mitchell v. Colvin*, No. 4:13CV131 CDP, 2014 WL 65386, at *25 (E.D. Mo. Jan. 8, 2014) (finding harmless error in failing to find bipolar disorder severe where the ALJ included bipolar disorder in his thorough analysis of claimant's complaints and symptoms relating to all mental impairments-including bipolar disorder-as well as her providers' observations and the treatment rendered and recommended for her impairments); *Hankinson v. Colvin*, No. 4:11-CV-2183-SPM, 2013 WL 1294585, at *12 (E.D. Mo. Mar. 28, 2013) (holding the ALJ committed harmless error in failing to find claimant's personality disorder severe where the ALJ specifically discussed claimant's personality disorder diagnoses, the symptoms claimant or her doctors identified as being related to her personality disorder, and the limitations attributable to her personality disorder).

Such is not the case here, as the ALJ's discussion of medical observations, objective testing, diagnoses, and limitations garnered a mere page worth of analysis. (Tr. 20) Most glaring is the ALJ's complete disregard of Plaintiff's treating physician, Dr. Little. This is more than a deficiency in the ALJ's opinion-writing technique. *But see Johnson v. Apfel*, 240 F.3d 1145, 1149 (8th Cir. 2001) ("Any arguable deficiency, . . . in the ALJ's opinion-writing technique does not require this Court to set aside a finding that is supported by substantial

evidence" where the ALJ's decision demonstrates she considered the entire record, including the medical testimony).

The Court acknowledges the ALJ considered the effects of Plaintiff's diagnosed mental impairments on her ability to function under the listings. (Tr. 17-18) Specifically, the ALJ assessed Plaintiff's mental impairments under listing 12.04, affective disorders, which includes depressive, bipolar, and related disorders. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders. However, the ALJ's assessment of whether Plaintiff's mental impairments meet listing 12.04 consists almost exclusively of Plaintiff's subjective reports and not on observations and treatment records from Plaintiff's mental health providers. (Tr. 17-18) Review of the Psychiatric Review Technique shows the examiner based his opinion solely on Plaintiff's hospitalization in 2015 and one psychological consultative examination. (Tr. 66) On remand, the ALJ should complete a psychiatric review technique form, or include the required analysis in his written decision, addressing Plaintiff's bipolar disorder. *Haley v. Colvin*, No. 2:13CV29 CDP, 2014 WL 117575, at *11 n.3 (E.D. Mo. Jan. 13, 2014).

## IV. Conclusion

For the reasons state above, the Court finds reversal and remand is appropriate in this case. *See Nicola,* 480 F.3d at 887 (remanding case where ALJ erred in finding claimant's diagnosis of borderline intellectual functioning was not a severe impairment); *Haley*, 2014 WL 117575, at *11 n.3 (reversing and remanding for further consideration of claimant's mental impairment, including obtaining a psychiatric review technique form and analysis). On remand, the ALJ shall consider Plaintiff's bipolar disorder at step two of the sequential analysis and assess all the medical evidence in the record as a whole, including the evaluation of medical records and opinions of Plaintiff's treating and consulting physicians under the appropriate

standards, and in particular the records and opinions of Dr. Little. Further, the ALJ shall include an updated psychiatric review technique form in his analysis of Plaintiff's mental impairments. Finally, to the extent further development of the record is required, the ALJ shall order additional testing or consultative examinations, or recontact Plaintiff's physician(s), to properly assess the steps of the sequential evaluation under 20 C.F.R. §§ 404.1520(a) and 416.920(a).

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits is **REVERSED** and the case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum and Order.

An appropriate Order of Remand shall accompany this Memorandum and Order.

Dated this 20th day of September, 2019.

 

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE